IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAMILLA SENA,

        Plaintiff,

vs.                                                                    No. CIV-01-1244 MV/LFG

CORRECTIONAL MEDICAL SERVICES, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Remand and Sanctions, filed November 30, 2001 **[Doc. No. 6]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Plaintiff's motion is well-taken in part, and, accordingly, will be **GRANTED in part and DENIED in part.**

## BACKGROUND

Plaintiff Camilla Sena commenced a wrongful termination action against Defendant Correctional Medical Services, Inc. ("CMS") on November 13, 2001 in the Fourth Judicial District Court of the State of New Mexico. Her Complaint alleges breach of an employment contract based on a personnel handbook and intentional infliction of emotional distress. Ms. Sena seeks damages in an unspecified amount for lost wages, employment benefits, emotional and psychological trauma and emotional distress, in addition to punitive damages and costs.

CMS filed a Notice of Removal ("First Notice"), removing the case to the United States District Court, District of New Mexico, in December 2000, where it was docketed as CIV 00-1809, and assigned to Chief Judge James A. Parker. The First Notice summarizes Ms. Sena's claims of

damages, states that the amount in controversy exceeds $75,000, and attempts to support the amount in controversy statement by citing to several New Mexico employment cases in which juries awarded verdicts in excess of $75,000.

At a pre-trial conference held on October 2, 2001, Chief Judge Parker raised *sua sponte* the issue of whether the federal court has diversity jurisdiction in the instant case. Specifically, the Court's concern was whether the amount in controversy exceeds $75,000. Accordingly, Chief Judge Parker ordered the parties to submit simultaneous briefs on the jurisdiction question.

During the pre-trial conference, counsel for CMS asked the Court to have Ms. Sena's attorney, Warren Frost, make a statement on the record concerning the matter of the amount in controversy. The Court granted the request, and this discussion on the record followed:

> Mr. Frost: It's the plaintiff's intent to pursue and seek in excess of $75,000 in damages in this proceeding.
>
> The Court: Okay. It would be your argument that the plaintiff's damages reasonably exceed $75,000; is that correct?
>
> Mr. Frost: Yes, sir.
>
> The Court: Why don't you explain in a little more detail what you believe the components of the different elements of damages are.
>
> Mr. Frost: Basically we have back pay for a period of, oh, up to this point she has not gotten back to a full-time position, she probably has 15 or $20,000 worth of back pay that she is entitled to as a result of her termination. In addition, we have secured Brian McDonald to serve as our economic expert in this case, who will testify that through the period of her work life she would have in excess of additional hundred thousand dollars in front pay damages, which are measured by the difference between what she is making now in her part-time job and what she could have made had she stayed with the current employer.
>
> The Court: Is that present value of future front pay?

| | |
|---|---|
| Mr. Frost: | Yes, sir. Yes, sir. To be honest with the Court, however, Dorothy [*sic*] McDonald will also testify that there are studies out there that discuss, that show that normally a displaced worker of the nature that Ms. Sena is, will get back to their previous level of employment within four, five years. |
| The Court: | Okay. So how does he quantify the front pay? |
| Mr. Frost: | He doesn't really do that in the report that I have got, but he is throwing that out, and then I intend to argue that this isn't a normal situation in light of the fact that she lives in Fort Sumner, New Mexico, a very small community. Her husband is the sheriff there. She doesn't have the ability to move around and go find these jobs that a normal person would be able to find. |
| The Court: | What other elements of damages? |
| Mr. Frost: | We also plan to present emotional distress damages, although we have no expert witness on that, and she has not sought any separate counseling on that. We think that the conduct of the defendants leading up to her termination and her termination in this public restaurant would justify an award of emotional distress damages. |

Tr. of October 2, 2001 pre-trial conference, at pp. 3-5.

On October 22, 2001, Chief Judge Parker entered an Amended Memorandum Opinion and Order of Remand ("Chief Judge Parker's Order"), finding that CMS had not shown by a preponderance of the evidence that the amount in controversy was met, and, accordingly, remanding the case to the Fourth Judicial District Court. Although CMS asked the Court to rely on Mr. Frost's oral statements made during the pre-trial conference regarding the amount of damages, the Court specifically declined to do so, finding that CMS was required to show that "the amount in controversy was met *at the time the Notice of Removal was filed*," rather than on a date thereafter. Chief Judge Parker's Order at p. 6 (emphasis added). Citing Tenth Circuit precedent, the Court explained that

it was constrained to consider only the material in the record at the time of removal. Since the First Notice predated the pre-trial conference, Mr. Frost's statements did not constitute other material in the record at the time of removal, and, accordingly, the Court refused to consider these statements in reaching its decision to remand the case.

Thereafter, on October 31, 2001, CMS filed a second Notice of Removal ("Second Notice"), again removing the case to the United States District Court, District of New Mexico, where it was docketed as CIV 01-1244 and assigned to Judge Martha Vázquez. In the Second Notice, CMS relies on Mr. Frost's statements during the pre-trial conference to establish that the amount in controversy requirement for diversity jurisdiction is met.

On November 30, 2001, Ms. Sena filed the instant Motion for Remand and Sanctions. In support of her Motion, Ms. Sena argues that CMS is prohibited from attempting to remove the case for a second time, and that, in light of Chief Judge Parker's Order, CMS's second attempt at removal constitutes sanctionable conduct pursuant to Rule 11 of the Federal Rules of Civil Procedure.

## **DISCUSSION**

**CMS's Second Notice of Removal**

As set forth in Chief Judge Parker's Order, there is a presumption against removal jurisdiction. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.), *cert. denied*, 516 U.S. 863 (1995). As a result, "removal statutes are construed narrowly" and all uncertainties in removal jurisdiction are resolved in favor of remand to state court. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). Since CMS is invoking diversity jurisdiction, CMS has the burden of establishing that the amount in controversy requirement is met. *Id.* (citations omitted). The amount in controversy "must be affirmatively

-4-

established on the face of either the [complaint] or the removal notice" and supported by the underlying facts. *Laughlin*, 50 F.3d at 873 (citations omitted). When "the plaintiff's damages are unspecified, courts generally require that a defendant establish the jurisdictional amount by a preponderance of the evidence." *Martin*, 251 F.3d at 1290 (citations omitted).

The procedure for removal of a case from state court to federal court is set forth in 28 U.S.C. §1446. Subsection (b) of §1446 provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . .
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

In *O'Bryan v. Chandler*, the Tenth Circuit unequivocally held that "§1446(b) allows for more than one petition to remove." 496 F.2d 403, 408 (10th Cir.), *cert. denied*, 419 U.S. 986 (1974). Indeed, the very language of §1446(b), which "tells us that even when a case is not removable at the outset, a notice of removal may be filed within 30 days after it becomes removable," "implies that an unsuccessful earlier attempt to remove is not dispositive." *Benson v. SI Handling Systems, Inc.*, 188 F.3d 780, 782 (7th Cir. 1999).

In order to state a sufficient basis for a second petition to remove, the party seeking removal may not allege the same grounds for removal that were alleged in the first petition. The term "same grounds" does not mean, however, the same cause of action or theory of recovery. *O'Bryan*, 496

F.2d at 410. Rather, the second petition for removal must be based on a new pleading or event that makes the case removable. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996) (citing *O'Bryan*, 496 F.2d at 410). Under § 1446(b), a second petition for removal is valid so long as it "alleges new facts in support of the same theory of removal" as that alleged in the prior petition. *S.W.S. Erectors*, 72 F.3d at 493 (citing *O'Bryan*).

In the instant case, CMS based the Second Notice on a new event that allegedly makes the case removable, namely Mr. Frost's statements during the pre-trial conference. As Mr. Frost's statements were not part of the record at the time of the First Notice and, as a result, Chief Judge Parker did not consider these statements in rendering his decision to remand the case, these statements properly constitute a new event for purposes of §1446(b). Thus, the Second Notice properly "alleges new facts in support of the same theory of removal" as that alleged in the First Notice. *Id.* Accordingly, Ms. Sena's argument that CMS was precluded by Chief Judge Parker's Order from filing the Second Notice ignores well-settled law. Indeed, the holding in *O'Bryan* "demonstrates that a remand order that expressly addresses the theory of federal jurisdiction does not have res judicata effect on subsequent removals based on the same theory, provided that the subsequent removal petitions allege a different factual basis for seeking removal." *S.W.S. Erectors*, 72 F.3d at 493.

This Court, however, must determine whether the Second Notice meets the requirements of the second paragraph of §1446(b). Pursuant to that paragraph, in order to establish the propriety of removal, the Second Notice must have been: (1) filed within thirty days after CMS's receipt, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it was first ascertained that the case is one which is or has become removable; and (2) filed within one

year after commencement of the action. CMS argues that both requirements are met, as the Second Notice was filed on October 31, 2001, within (1) thirty days of the pre-trial conference during which Ms. Sena's attorney, Mr. Frost, made an oral statement on the record that Ms. Sena was seeking more than $75,000 in damages; and (2) one year of the commencement of the action on November 13, 2000. While the second requirement clearly is met, this Court cannot agree that the first requirement also is met.

CMS does not base its Second Notice on "an amended pleading, motion, or order" filed by Ms. Sena in the instant action. Rather, the Second Notice is based solely on Mr. Frost's oral statements, which CMS contends constitute an "other paper" from which it was first ascertained that the case was or had become removable. This Court can find no precedent for construing these oral statements as an "other paper" within the meaning of §1446(b). Indeed, CMS cites to no such precedent. Rather, CMS cites to two cases concerning deposition testimony, one where the individual plaintiff testified and one where the president of the plaintiff company testified, and both where the witness testified as to the *specific* amount of damages he or his company was seeking in the case. *See Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072 (10th Cir. 1999); *S.W.S. Erectors*, 72 F.3d 489 (5th Cir. 1996). Oral statements of an attorney are not sufficiently analogous to sworn testimony of a party to support CMS's interpretation of Mr. Frost's statements as an "other paper" for purposes of §1446(b).

Moreover, Mr. Frost's statements during the pre-trial conference are insufficient to establish by a preponderance of the evidence that the amount in controversy requirement is met. Mr. Frost made a vague, generalized statement that it was Ms. Sena's "intent to pursue and seek in excess of $75,000 in damages." He did not, however, provide an exact amount of the damages she actually

suffered. When pressed by the Court for an explanation of his statement, the only monetary amount which Mr. Frost quoted was an estimate that Ms. Sena was entitled to $15,000 to $20,000 in "back pay." These numbers fall far short of the $75,000 amount in controversy requirement. While Mr. Frost said that he had retained an expert witness who would testify that Ms. Sena "would have in excess of additional hundred thousand dollars in front pay damages," he then qualified this statement, stating that the expert would also testify that "there are studies out there that show that normally a displaced worker of the nature that Ms. Sena is, will get back to their previous level of employment within four, five years." When the Court asked how the expert quantified front pay, Mr. Frost replied that "he doesn't really do that in the report that I have got." Mr. Frost's speculation and conjecture fail to establish that Ms. Sena actually seeks damages in an amount greater than $75,000. Consequently, Mr. Frost's statements did not, as CMS contends, constitute new grounds upon which CMS was entitled to seek removal, and did not "open a new thirty-day window for removal under §1446(b)." As the Second Notice thus does not meet the requirements of the second paragraph of §1446(b), removal is not proper. Accordingly, this case must be remanded to state court.

**Rule 11 Sanctions**

Ms. Sena seeks sanctions under Rule 11 of the Federal Rules of Civil Procedure against CMS and its counsel. Rule 11(c) provides, *inter alia*, that if, after notice and a reasonable opportunity to respond, the Court determines that an attorney has violated subdivision (b) by filing a pleading containing claims, defenses or other legal contentions that are not warranted by existing law, appropriate sanctions may be imposed upon the responsible attorneys, law firms or parties. Rule 11(c) further provides that a motion for sanctions must be made separately from other motions or requests, must describe the specific conduct alleged to violate subdivision (b), must be served as

provided in Rule 5, but must not be filed with the Court unless, within 21 days after service of the motion, the challenged pleading is not withdrawn or corrected.

The standard by which the Court must evaluate the conduct of litigation is "objective reasonableness -- whether a reasonable attorney admitted to practice before the district court would file such a document." *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988). Thus, "an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions." *White v. General Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir. 1990), *cert. denied*, 498 U.S. 1069 (1991). Although the Second Notice does not sufficiently establish that the requisite amount in controversy is met, this Court does not find that CMS's filing of the Second Notice was objectively unreasonable. As the law clearly permits successive removals, given the circumstances of the case, it was objectively reasonable for CMS to file the Second Notice. Accordingly, there is no basis for imposing sanctions on CMS or its attorneys.

Moreover, Ms. Sena's request for sanctions does not comport with the provisions of Rule 11(c) that such a request be made in a motion separate from other motions, and that the party requesting sanctions refrain from filing her motion with the Court unless, within 21 days after service of the motion, the challenged pleading is not withdrawn or corrected. Ms. Sena improperly combined her Motion for Sanctions with her Motion for Remand. In addition, she also presented her Motion to the clerk of the Court for filing and sent Chief Judge Parker a courtesy copy at the same time that she served CMS. Her failure to comply with the mandatory safe harbor provision of Rule 11(c) alone justifies denial of Ms. Sena's request for sanctions. *See Aerotech, Inc. v. Estes*, 110 F.3d 1523, 1528-29 (10th Cir. 1997).

## **CONCLUSION**

As the Second Notice of Removal does not meet the requirements of §1446(b), CMS has not provided a sufficient basis for removal of this case. Accordingly, this case is remanded to the Fourth Judicial District, County of Guadalupe, State of New Mexico. This Court, however, finds that Rule 11 Sanctions are neither appropriate nor warranted in this case, and thus declines to impose such sanctions on CMS or its attorneys.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Remand and Sanctions **[Doc. No. 6]** is **GRANTED in part and DENIED in part**.

**DATED** this 27th day of September, 2002.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Warren F. Frost, Esq.

Attorneys for Defendant:
Jennifer A. Noya, Esq.
Douglas G. Schneebeck, Esq.
Modrall, Sperling, Roehl, Harris & Sisk, P.A.